**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| RONNIE L. JACKSON )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>BCI SOLUTIONS, INC., )<br>)<br>Defendant. ) | CASE NO. 3:21-cv-265 |

***COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF***
***AND REQUEST FOR TRIAL BY JURY***

Plaintiff Ronnie L. Jackson (hereinafter "Jackson"), by his counsel, for his cause of action against Defendant BCI Solutions, Inc. (hereinafter "BCI Solutions"), states as follows:

### I. FACTUAL ALLEGATIONS

1. Jackson resides in South Bend, St. Joseph County, Indiana.

2. Bremen Castings hired Jackson in approximately June 2017 to work at its manufacturing facility in Bremen, Indiana. Jackson worked as a scale operator. To no avail, Jackson made multiple reports to BCI Solutions raising both supervisor and coworker race harassment that created for him an extremely severe and pervasive hostile work environment. Jackson even filed a Charge of Discrimination with the EEOC while still employed, but BCI Solutions took no effort to investigate, much less cure, the increasingly hostile work environment Jackson was forced to work in. Finally, in October 2020, Jackson's work environment became so intolerable that Jackson was constructively discharged from employment.

3. BCI Solutions operates its iron foundry in Bremen, Marshall County, Indiana.

BCI Solutions describes itself as a "manufacturer of gray & ductile iron castings for motor vehicle parts, valves & pipe-fittings, farm machinery, internal combustion engines, measuring & dispensing pumps, compressors, and lawn/garden equipment."

4. Jackson is African American. Based upon observation and belief, Jackson was one of only a very few African American employees working for BCI Solutions. Most employees and certainly most managers were Caucasian.

5. During his employment at BCI Solutions, Jackson was discriminated against and harassed because of his race in multiple ways, including, but not limited to, the following:

    a. Promotions. Jackson was repeatedly passed over for promotions to Team Lead positions under circumstances when 1) he was filling the Team Lead position on an interim basis at the time the promotion decision was made, 2) Jackson was the most qualified and experienced candidate for the promotion, and 3) Jackson was the person assigned to train the less qualified Caucasian employee actually chosen for the promotion;

    b. Wages. Jackson was paid less and/or not given commensurate pay increases when compared to his similar or less qualified Caucasian coworkers;

    c. Harassment and Hostile Work Environment. As described in detail in the paragraphs below, Jackson was repeatedly subjected to supervisor and coworker racial harassment throughout his employment, including repeated use of racial slurs and actual threats of violence;

    d. Retaliation. Jackson made multiple complaints of race discrimination to BCI Solutions' human resources department, including complaints to Human

    Resources Manager Stan Hueni. No action was taken to investigate or cure the discrimination. Jackson filed an EEOC Charge of Discrimination in early September 2020 while he was still employed by BCI Solutions. After his formal race discrimination complaints, BCI Solutions sought to pretextually discipline Jackson for rule violations he did not commit. BCI Solutions began to scrutinize and watch Jackson on a constant basis. BCI Solutions actually allowed Jackson's work environment to become even more hostile, to the point the work environment was intolerable.

 e. Constructive Discharge. As described above, BCI Solutions permitted Jackson's work environment to become more and more hostile until Jackson could take no other reasonable action than to quit for his own safety and personal and psychological well-being.

6. To provide more detail about Jackson's claims based upon BCI Solutions' discriminatory treatment in promotions, for a period of approximately two years, multiple occasions arose in which the position of Team Leader for the team Jackson worked became available. Jackson actually formally applied for the Team Leader position. Jackson was never interviewed for the open Team Leader positions on any occasion the promotion was available, however, on multiple occasions when BCI Solutions was seeking to fill the Team Lead position, 1) Jackson was assigned the task of filling the Team Lead position on an interim basis at the time the promotion decision was made, and 2) Jackson was the most qualified and experienced candidate for the promotion. On one occasion, rather than interview and promote Jackson to Team Leader, BCI Solutions hired a Caucasian outside job candidate named Alan Hall for the

3

job. Jackson was the person assigned to train the less qualified Caucasian employee, Alan Hall. Mr. Hall was paid approximately $22.00 per hour to do the Team Lead job. When Jackson was filling the Team Lead role on an interim basis, Jackson was paid a base rate between $14.00 and $15.00 per hour (Jackson may have been paid some shift differential pay as well). Jackson was never considered for this promotion and his application for the promotion never received any response.

Similarly, on a second occasion, rather than interview and promote Jackson to the vacant Team Leader position on Jackson's team, BCI Solutions hired a Caucasian job candidate named "Michael V" for the job. Jackson was the person assigned to train the less qualified Caucasian employee, Michael V. Michael V was paid significantly more to do the Team Lead job than Jackson had been paid. When Jackson was filling the Team Lead role on an interim basis, Jackson was again paid a base rate between $14.00 and $15.00 per hour. Jackson was never considered for this promotion and his application for the promotion never received any response.

Jackson made formal complaints of race discrimination to BCI Solutions human resources department and, later, to the EEOC about the failure to even consider Jackson for the multiple promotions to Team Lead, but no action to cure was taken.

7. In addition to the examples of discrimination in wages based upon race, during his employment Jackson received pay increases that were smaller in amount or were delayed in timing when compared to pay raises and pay raise amounts given by BCI Solutions to similar or less senior Caucasian coworkers. An example of this unequal treatment in wages occurred in early 2020. Jackson earned, but was not paid, a merit increase in his pay for his work the prior

year. Two far less senior Caucasian coworkers, Jeremiah Thompson and Noah (last name not known) were given merit increases in wages at that time although the two Caucasian employees had worked only 60 days, not the entire year. In contrast, Jackson was not provided that same (an additional $0.25/hour) merit wage increase provided to Jeremiah and Noah in 60 days until Jackson worked for one and one-half years.

8. From early in his employment with BCI Solutions, a number of Jackson's Caucasian coworkers made repeated use of offensive racist slurs at Jackson and in the hearing of Jackson. By far, the worst of Jackson's racial harassers was a Caucasian employee named Ryan. Ryan repeatedly called Jackson a "bitch ass n - - - er" to his face and in the hearing of other coworkers. Jackson complained to human resources, including Human Resource Manager Stan Hueni. Other than send Ryan home for part of one day, BCI Solutions took no action to fire Ryan for his racist slurs or to protect Jackson from Ryan. The racial slurs continued and increased, along with threats of violence. Ryan began to challenge Jackson at work to physically fight and otherwise threaten him with violence. Ryan became so violent and agitated toward Jackson that Ryan followed Jackson to Jackson's home in South Bend in his vehicle after a work shift (a distance of approximately 20 miles and a drive of 30 minutes). Ryan screamed and challenged Jackson to fight. Jackson declined. Ryan filmed himself challenging Jackson to fight and shared the video with other BCI Solutions coworkers on social media. Jackson reported all of this to Human Resources Manager Stan Hueni, but BCI Solutions took no action whatsoever to fire Ryan or to protect Jackson from further racial slurs or threats of violence.

9. Over the course of his BCI Solutions employment, Jackson was also harassed and subjected to personal attacks by Jackson's immediate supervisor, Spencer Kanarr. Kanarr would

seek to embarrass Jackson in front of coworkers, often calling Jackson "dumbass" or other insults.  Kanarr's personal attacks on Jackson particularly increased after Jackson made his initial race discrimination complaints to BCI Solutions' human resource office.  Jackson reported Kanarr's acts of discrimination and harassment, but no action was taken to punish Kanarr or to protect Jackson from the increasing harassment and hostility.  Kanarr did not treat the Caucasian employees he supervised with such hostility or derision.

      10.     Jackson's Caucasian supervisor and coworkers created a racist, hostile work environment for Jackson, subjecting him to racist slurs, insults and threatening Jackson with actual violence.  Jackson was made to feel absolutely unwelcome because of his race.  Jackson's racist supervisor and coworkers went out of their way to intimidate Jackson.  When Jackson sought help, through race discrimination complaints to the human resources department, the hostility increased to the point Jackson's physical and mental well-being were at risk and the work conditions were so intolerable that Jackson's only reasonable alternative was to leave work based upon the assumption he had been constructively discharged.  In fact, the refusal to take any action to investigate Jackson's race discrimination complaints and the refusal to investigate or take action to protect Jackson from harassment and racial slurs were acts of retaliation by the BCI Solutions management, taken to pressure Jackson to quit.

      11.     After Jackson made his EEOC Charge of Discrimination complaint to the EEOC in September 2020, a man named Scott Lloyd - an employee known at the plant to be a longtime employee and close friend of the owner, J.B. Brown - began following Jackson at work, particularly following Jackson and watching Jackson on any type of work break (e.g., bathroom break, drink break).

12. Jackson is bringing claims of race discrimination, racial harassment and creation and failure to cure a racially hostile work environment, along with claims of retaliation against BCI Solutions under Title VII of the Civil Rights Act of 1964 and under the Civil Rights Act of 1866. See 42 USC § 1981.

13. Jackson is seeking all available damages, including all back pay and benefits, front pay and benefits, all other available equitable relief, and all available compensatory damages and punitive damages. He is seeking payment of all of his reasonable attorney's fees, costs and expenses.

14. By way of this Complaint, Jackson seeks to vindicate his rights and the rights of other African Americans to fair and equal opportunity in employment.

## II. JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 42 U.S.C § 2000e et seq, and 42 U.S.C. § 1981, as Jackson's Complaint raises federal questions of law.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the unlawful conduct alleged herein was and is now being committed in the Northern District of Indiana.

## III. PARTIES

17. At the time of his employment and his constructive discharge from employment, Jackson was domiciled in and resided in South Bend, Indiana.

18. BCI Solutions employed Jackson in Bremen, Marshall County, Indiana.

## IV. ADMINISTRATIVE COMPLIANCE

19. Jackson has complied with all of the administrative procedures that are conditions

precedent to the filing of this lawsuit. Jackson received his Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission. That Notice of Right to Sue is dated March 16, 2021.

## V.  STATEMENT OF CLAIMS

### A.  RACE DISCRIMINATION CLAIMS UNDER 42 U.S.C. § 1981

20. Jackson alleges and incorporates herein by reference paragraphs 1 through 19 above.

21. Jackson had an employment relationship with BCI Solutions, thereby creating a relationship that is contractual in nature between Jackson and BCI Solutions.

22. BCI Solutions' discriminatory actions have violated Jackson's rights which are protected by the Civil Rights Act of 1866, 42 U.S.C. § 1981.

23. Specifically, Jackson was treated in a disparate manner in the terms, conditions and privileges of his employment as compared to other similarly situated Caucasian co-workers. Jackson was discriminatorily denied promotions, pay increases, was harassed and subjected to a racially hostile work environment, was retaliated against and was ultimately constructively discharged from employment by BCI Solutions.

24. As a direct and proximate result of BCI Solutions' discriminatory practices, Jackson has found it necessary to retain the services of an attorney and is therefore entitled to his reasonable attorney's fees, costs and expenses in this matter.

25. By way of this Complaint, Jackson specifically alleges that BCI Solutions intentionally and/or with reckless disregard, discriminated against him in the terms, conditions and privileges of his employment on the basis of his race. As a direct result of this

discrimination, Jackson has suffered substantial damages.

26. Jackson is seeking from BCI Solutions all available damages under 42 U.S.C. § 1981, including all available back pay and benefits, front pay and benefits, all available compensatory damages, punitive damages, his attorney's fees, expenses and costs, plus any and all other equitable relief.

### B. RACE DISCRIMINATION CLAIMS UNDER TITLE VII

27. Jackson alleges and incorporates herein by reference paragraphs 1 through 26 above.

28. BCI Solutions' discriminatory actions have violated Jackson's rights which are protected by Title VII of the Civil Rights Act of 1964.

29. Specifically, Jackson was treated in a disparate manner in the terms, conditions and privileges of his employment as compared to other similarly situated Caucasian co-workers. Jackson was discriminatorily denied promotions, pay increases, was harassed and subjected to a racially hostile work environment, was retaliated against and was ultimately constructively discharged from employment by BCI Solutions.

30. As a direct and proximate result of BCI Solutions' discriminatory practices, Jackson has found it necessary to retain the services of an attorney and is therefore entitled to his reasonable attorney's fees, costs and expenses in this matter.

31. By way of this Complaint, Jackson specifically alleges that BCI Solutions intentionally and/or with reckless disregard, discriminated against him in the terms, conditions and privileges of his employment on the basis of his race. As a direct result of this discrimination, Jackson has suffered substantial damages.

32. Jackson is seeking from BCI Solutions all available damages under Title VII, including all available back pay and benefits, front pay and benefits, all available compensatory damages, punitive damages, his attorney's fees, expenses and costs, plus any and all other equitable relief.

## *PRAYER FOR RELIEF*

WHEREFORE, Plaintiff Ronnie L. Jackson requests the following relief:

1. That the Court issue a declaratory judgment deeming the actions of BCI Solutions, Inc. to be a violation of Jackson's rights under the Civil Rights Act of 1866 and Title VII of the Civil Rights Act of 1964;

2. That the Court enjoin and restrain BCI Solutions, Inc. and all other persons acting on its behalf from engaging in such unlawful and discriminatory practices as set forth in this Complaint;

3. That the Court enter judgment in favor of Jackson and against BCI Solutions, Inc. for all lost wages and benefits, including back pay and front pay, that the Court determines Jackson lost as a result of BCI Solutions, Inc.'s unlawful conduct, together with all available pre-judgment interest;

4. That the Court enter judgment in favor of Jackson and against BCI Solutions, Inc. for all available compensatory damages, including, but not limited to, damages for pecuniary losses, damages for humiliation, career disadvantage, loss of enjoyment of life, mental and emotional stress and anguish, and future lost earnings, all together with pre-judgment interest. Further, that the Court award Jackson punitive damages against BCI Solutions, Inc.;

5. That the Court award to Jackson his reasonable attorneys fees, costs and

expenses;

6. That the Court award any and all such other and further equitable relief as may be appropriate to fully redress the deprivation of Jackson's rights, to prevent their reoccurrence in the future and to protect other BCI Solutions, Inc. employees from such unlawful behavior.

HASSLER KONDRAS MILLER LLP
100 Cherry St.
Terre Haute, Indiana 47807
(812) 232-9691

By /s/Robert P. Kondras, Jr.
   Robert P. Kondras, Jr.
   Attorney No. 18038-84
   Attorney for Plaintiff
   kondras@hkmlawfirm.com

## *REQUEST FOR TRIAL BY JURY*

Comes now Plaintiff Ronnie L. Jackson, by his counsel, and hereby requests a trial by jury, on all issues which may be tried to a jury.

HASSLER KONDRAS MILLER LLP
100 Cherry St.
Terre Haute, Indiana 47807
(812) 232-9691

By /s/Robert P. Kondras, Jr.
   Robert P. Kondras, Jr.
   Attorney No. 18038-84
   Attorney for Plaintiff
   kondras@hkmlawfirm.com